USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/13/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

GRANITE ENTERPRISES LIMITED,

             Plaintiff,          09 Civ. 4534

  -against-

VIRGOZ OILS & FATS PTE. LTD. and
PT PERMATA HIJAU SAWIT,

             Defendants.

------------------------------------X

LILITH TRADING INC.,

             Plaintiff,          09 Civ. 4750

  -against-

VIRGOZ OILS & FATS PTE. LTD. and
PT PERMATA HIJAU SAWIT,

             Defendants.

------------------------------------X

PEARL HOLDINGS S.A.,

             Plaintiff,          09 Civ. 4751

  -against-

VIRGOZ OILS & FATS PTE. LTD. And          **OPINION**
PT PERMATA HIJAU SAWIT,

             Defendants.

------------------------------------X

**Sweet, D.J.**

ADM International Sarl ("ADM"), which is neither plaintiff nor defendant in this matter, has moved to vacate a portion of the maritime attachment issued pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure.

For the reasons set forth below, ADM's motion is granted.

**Prior Proceedings**

The facts and disposition of this case as set forth in the Court's Order of February 11, 2010 are repeated in part below as relevant to the present motion.

Plaintiffs Granite Enterprises Limited ("Granite"), Lilith Trading ("Lilith"), and Pearl Holdings ("Pearl") (collectively, "Plaintiffs") commenced this action in 2009 against Defendants Virgoz Oil & Fats and PT Permata Hijau Sawit (collectively, "Defendants" or "Virgoz") seeking security for claims pending before or resolved in London-based arbitrations. On May 18 (in Granite Enterprises Limited v. Virgoz Oils et al.)

1

and May 22 (in <u>Lilith Trading Inc. v. Virgoz Oils et al.</u> and <u>Pearl Holdings S.A. v. Virgoz Oils et al.</u>) of 2009, the Court issued orders (the "Attachment Orders"), pursuant to Rule B, authorizing the attachment of certain property, including electronic fund transfers ("EFTs")[1] in or passing through this district. Following service of the Attachment Orders on several garnishee banks in the district, a number of EFTs originating with and for the benefit of Defendants were restrained.

One particular transaction was restrained at Citibank (the "Citibank Restraint"), in the amount of $341,775, which described "Virgoz Oils and Fats Pte Ltd" as the "drawer." The instant motion relates to the attachment of these particular funds (the "Funds").

---

[1] As the Circuit has explained:

> An EFT is nothing other than an instruction to transfer funds from one account to another. When the originator and the beneficiary each have accounts in the same bank that bank simply debits the originator's account and credits the beneficiary's account. When the originator and beneficiary have accounts in different banks, the method for transferring funds depends on whether the banks are members of the same wire transfer consortium. If the banks are in the same consortium, the originator's bank debits the originator's account and sends instructions directly to the beneficiary's bank upon which the beneficiary's bank credits the beneficiary's account. If the banks are not in the same consortium—as is often true in international transactions—then the banks must use an intermediary bank.

<u>Shiping Corp of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58, 61 n.1 (paraphrasing <u>United States v. Daccarette</u>, 6 F.3d 37, 43-44 (2d Cir. 1993)).

2

On October 2, 2009, the parties entered into a stipulation directing garnishee bank HSBC to release $408,532.45 of Virgoz's funds under attachment to Granite in satisfaction of two outstanding arbitration awards.

On November 12, 2009, Defendants requested by letter that the Court issue an order to show cause as to why the attachment should not be vacated in light of the Second Circuit's decision in <u>Shipping Corporation of India Ltd. v. Jaldhi Overseas Pte Ltd.</u>, 585 F.3d 58 (2d Cir. 2009). That letter was treated as a motion and heard on November 24, 2009.

On February 11, 2010, the Court upheld the attachment with respect to the $341,775 Citibank restraint (the Citibank Restraint at issue here) as well as the $408,532.45 addressed in the October 2, 2009 Stipulation. The Court vacated the attachment with respect to the remaining EFTs (those restrained at intermediary banks) under <u>Jaldhi</u>, 585 F.3d 58.

On April 13, 2011, interested non-party ADM moved to vacate the Citibank Restraint. This motion was marked fully submitted on May 18, 2011.

**Discussion**

ADM has moved to vacate the Citibank Restraint on the grounds that under the reasoning of the Second Circuit's decision in Jaldhi, 585 F.3d 58, there is no lawful basis for the attachment.

In its February 11, 2010 Opinion, this Court upheld Citibank Restraint on the grounds that Citibank served as the originating bank, rather than an intermediate bank, with respect to the EFT, and "[b]ecause Jaldhi dealt only with the restraint of EFTs passing through intermediary banks located in this district, this EFT falls outside the scope of Jaldhi's holding." (Slip Op. 2-3) (citing Jaldhi, 585 F.3d at 61).

In those proceedings, however, no question of the identity of the owner of the Citibank Funds was raised. With regard to the Citibank Restraint, Plaintiffs argued that the transfer was not an EFT (and so not subject to Jaldhi's holding) and that as a transaction restrained at an originating bank, it fell outside of Jaldhi, which they described as "address[ing] only one very specific type of property - an ephemeral EFT in the hands of an intermediary bank." (Docket No. 27, Pls. Mem. in Opp'n 2-3, 5-6.) Plaintiffs did not question whether Virgoz

4

had an attachable interest in the Funds. Virgoz argued only that attachments of all EFTs must be vacated under Jaldhi and opposed Plaintiff's contention that the Citibank transaction was not in fact an EFT. (Docket No. 30, Defs. Mem. 2-4.) Accordingly, the only issues before the Court with regard to the Citibank Restraint were whether that transaction was an EFT, and if so, if the holding of Jaldhi required vacature insofar as it addressed the validity of attachments of EFTs at intermediary banks.

In the instant motion, ADM contends that the funds subject to the Citibank Restraint originated with ADM, the transferor, and were payment for ADM's purchase of 500 MT of crude palm kernel oil from Virgoz on September 9, 2009. ADM supports this assertion with an affidavit from Leona Tout, General Manager Oil Trading and Energy for ADM. (Tout Aff.) ADM contends that following Virgoz's shipment of the oil, ADM requested that its bank, Citibank, pay Virgoz for the shipment by way of an EFT to Virgoz's bank, ING Singapore. This assertion is supported by the sales contract between ADM and Vigoz, dated September 10, 2009 for 500MT of crude palm kernel oil (Tout Aff. Ex. A), as well as an email confirming the same trade, dated September 10, 2009 (Tout Aff. Ex. B).

5

Plaintiffs do not contest that that Citibank was the originating bank, ADM the originating transferor, and Virgoz the intended beneficiary of the Funds. Moreover, the evidence conclusively establishes these facts, as the SWIFT instructions denote ADM as the originator and Virgoz as the beneficiary. (Mihalik aff. Ex. 1.) By affidavit, Mary Mihalik ("Mihalik") attests that the field designations used in SWIFT messages are not created anew by banks for each EFT, but instead are fixed. (Mihalik aff. ¶ 4.) Field "50K:" identifies the originator of the EFT — in this case, ADM. (Id.) Mihalik further attests that "Field 70: is the universally used field that contains remittance information from the originating party to the beneficiary about the reason for the payment" and "the use of the word 'drawer' in Field 70: did not make Virgoz the originator of the EFT." (Id.) Accordingly, the evidence establishes that ADM was the originator of the Funds. ADM maintains that following the restraint of the Funds at Citibank, it paid Virgoz a second time in such a manner as to avoid restraint. (ADM Reply Mem. 4-5.)

Rule B permits attachment of "the defendant's tangible or intangible personal property." Fed. R. Civ. P. Supp. R. B(1)(a). Crucially, the property in question must be the

"defendant's."  Id.  As the Second Circuit has explained, "[f]or maritime attachments under Rule B . . . the question of ownership is critical.  As a remedy quasi in rem, the validity of a Rule B attachment depends entirely on the determination that the res at issue is the property of the defendant at the moment the res is attached."  Jaldhi, 585 F.3d at 69 (citing Transportes Navieros y Terrestres S.A. de C.V. v. Fairmout Heavy Transp. N.V., 572 F.3d 96, 108 (2d Cir. 2009)).

Having found no guidance in federal maritime law, Jaldhi looked to state law in order to determine the underlying contours of property rights relative to EFTs, and accordingly whether the EFTs in question were the "defendant's" for Rule B purposes.  Id. at 70.  In its explication of state law, the Court explained that New York permits attachment by a creditor of a beneficiary of EFTs at the beneficiary's bank.  Id.  Likewise, the Court noted that "[a]s for those interested in obtaining the originator's funds, New York law is clear" that "'[a] creditor of the originator can levy on the account of the originator in the originator's bank before the funds transfer is initiated . . . .  The creditor of the originator cannot reach any other funds because no property of the originator is being transferred."  Id. at 70-71 (quoting N.Y. U.C.C. § 4-A-502 cmt. 4) (emphasis in original).

7

Relying on "an authoritative comment accompanying the New York Uniform Commercial Code," the Court concluded that the beneficiary of an EFT has no property interest in the EFT until the transfer is complete:

> [A] beneficiary has no property interest in an EFT because "until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the <u>beneficiary has no property interest in the funds transfer</u> which the beneficiary's creditor can reach."

Id. at 71 (quoting N.Y. U.C.C. § 4-A-502 cmt. 4) (emphasis in original). This finding was an essential predicate to the Court's holding that that for Rule B purposes, "EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank," id., and therefore ETFs passing through intermediary banks may not be attached there.

The question before the Court today is whether an EFT that originates from a party that is <u>not</u> subject to a Rule B order may be attached at the originating bank, prior to the completion of the funds transfer to the target beneficiary's bank. Put another way, were the Citibank Funds "defendant's" for purposes of Rule B?

8

In this respect, Plaintiffs contend that the record casts doubt on the contention that "Virgoz has no attachable interest in the funds." (Pls. Mem. 6.) Plaintiffs point out that it was Virgoz that initially moved for vacature of the Citibank Restraint and that Citibank attached the funds after ADM "instructed the bank to segregate the funds and transmit the funds to Virgoz." (Pls. Mem 6-7). Plaintiffs argue that "[t]hese facts collectively establish that Virgoz maintains an attachable property interest in the $341,775 at issue . . . ." (Pls. Mem. 7.) Plaintiff's contention, however is foreclosed by the Circuit's analysis in Jaldhi, which affirmed reliance on New York property rules regarding EFTs and could not have been more clear that under New York law, a defendant beneficiary such as Virgoz, "has no property interest in an EFT" "'until the funds transfer is completed.'" Jaldhi, 585 F.3d at 71 (quoting N.Y. U.C.C. § 4-A-502 cmt. 4).

As the Funds were frozen at Citibank and the transfer was never completed, Virgoz has no attachable property interest in the Funds, and so the attachment must be vacated. [2]

---

[2] Plaintiffs additionally seek an order staying the present motion in order to conduct discovery into "[ADM's] delayed challenge, the second payment, and why Virgoz - not ADM - initially moved for vacature." (Pls. Mem. 4, 7-9). However, Plaintiffs do not contest, and the evidence establishes, that ADM was the originator of the funds, Citibank was the

## Conclusion

For the foregoing reasons, the Citibank Restraint is vacated, and those funds are ordered to be released immediately.

It is so ordered.

New York, NY  
September 6 , 2011

ROBERT W. SWEET  
U.S.D.J.

---

originating bank, and Virgoz was the beneficiary.  Given these facts, additional discovery would not alter the result.